Steven John SLOTKIN, an infant by his mother and natural guardian, Charlotte SLOTKIN, and Charlotte Slotkin, as Executrix of the Estate of Bert Slotkin, deceased, Plaintiffs-Appellants,

v.

CITIZENS CASUALTY CO. OF NEW YORK, Allstate Insurance Company, American Motorists Insurance Company, American Mutual Insurance Company of Boston, Employers Mutual Liability Insurance Company of Wisconsin, Guaranty Reinsurance Company, Urbaine Fire Insurance Company, Grange League Insurance Co., National Casualty Co., Hardware Mutual Casualty Co., Arkwright-Boston Mfrs. Mutual Insurance Co., Paul Ratner, George Berkowitz, Christopher McGrath, Jr. and John McGrath, Defendants-Appellees.

No. 1342, Docket 82–7137.

United States Court of Appeals, Second Circuit.

Argued Aug. 11, 1982.

Decided Jan. 20, 1983.

Fred R. Profeta, Jr., New York City (Friedman & Eisenstein, of counsel, Theodore H. Friedman, Jethro Eisenstein and Max Toberoff, New York City, on brief), for plaintiffs-appellants.

Kenneth A. Sagat, New York City (D'Amato & Lynch, of counsel, Mary Jo Lynch, New York City, on brief), for defendants-appellees Allstate Ins. Co., Urbaine Fire Ins. Co., Arkwright-Boston Mfrs. Mut. Ins. Co., Hardware Mut. Cas. Co., and Nat. Cas. Co.

William F. O'Connor, New York City, for defendant-appellee American Ins. Co. of Boston.

Howard R. Cohen, New York City (Bower & Gardner, New York City, of counsel), for defendant-appellee Guaranty Reinsurance Co.

Before VAN GRAAFEILAND and PIERCE, Circuit Judges, and MARKEY *, Chief Judge.

VAN GRAAFEILAND, Circuit Judge:

No rule of American jurisprudence is better established than the salutary one which requires a lower court to carry out faithfully the express mandate of its appellate superior. *See, e.g., Kansas City Southern Ry. Co. v. Guardian Trust Co.,* 281 U.S. 1, 11, 50 S.Ct. 194, 197, 74 L.Ed. 659 (1930); *Ex parte Union Steamboat Co.,* 178 U.S. 317, 318–19, 20 S.Ct. 904, 905, 44 L.Ed. 1084 (1900); *Ex parte Sibbald v. United States,* 37 U.S. 488, 492, 9 L.Ed. 1167 (1838). The same rule prohibits litigants from circumventing such lower-court compliance "by stipulation or otherwise." *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.,* 386 U.S. 129, 136, 87 S.Ct. 932, 937, 17 L.Ed.2d 814 (1967). *See also United States v. E.I. Du Pont de Nemours & Co.,* 366 U.S. 316, 325 n.6, 81 S.Ct. 1243, 1250 n.6, 6 L.Ed.2d 318 (1961); *Reserve Mining Co. v. Lord,* 529 F.2d 181, 188 (8th Cir.1976). Appellants now ask this Court to reverse a district court judgment, 530 F.Supp. 789, which dismissed appellants' complaint because, following remand from this Court, they failed to pursue their claim against the defendants in accordance with our mandate. This we decline to do.

■ The issue before this Court on the prior appeal, 614 F.2d 301, was whether plaintiffs could secure state court approval and accept the benefits of a $185,000 infant settlement after they discovered that they had been misinformed as to the amount of a hospital's insurance coverage, and then recover in fraud from the persons allegedly responsible for the misinformation. They sued Citizens Casualty Co. of New York, the hospital's insurance carrier, Paul Rat-

---

* Then Chief Judge of the U.S. Court of Customs & Patent Appeals, sitting by designation.

ner, Citizens' Vice-President, George Berkowitz, Christopher McGrath, Jr. and John McGrath, three attorneys representing the hospital, and ten reinsurance carriers. The action was discontinued as against three of the reinsurance companies; the district judge, 447 F.Supp. 253, dismissed the complaint as against the other seven at the close of the plaintiffs' case. Subsequently, the district judge set aside verdicts totaling $680,000 against the remaining defendants, because plaintiffs had effectuated the infant's settlement some three months after they had been informed of the true facts concerning insurance coverage. This Court reversed as to all defendants except George Berkowitz and remanded for further proceedings in the district court.

In so doing, we had the choice of two possible dispositions: (1) we could have reinstated the $680,000 verdict and remanded for retrial against the defendants not included in the verdict or (2) we could have remanded for retrial against all of the defendants. Instead of our making the choice, we permitted plaintiffs to make it. We said:

> Because we have also held that the court below should not have dismissed the complaint against the reinsurers, plaintiffs have an option: they may either reinstate the verdict and judgment of $680,000 against Citizens and the three individuals, or they may retry the case ab initio against all appellees except George Berkowitz on both liability and damages. They may not do both. 614 F.2d at 318.

In conformity with this Court's mandate, the district court issued an order directing plaintiffs to exercise their option on or before February 19, 1981. At 4:50 p.m. on February 19, plaintiffs notified the district court that they were "electing to retry the case." However, they were not electing to "retry the case ab initio against all appellees except George Berkowitz on both liability and damages." Five minutes prior to filing their notice of election, plaintiffs had agreed to a settlement with Citizens and the McGraths, and plaintiffs, in fact, were electing to retry the case only against the reinsurance companies.

An understanding of why this election did not constitute compliance with our mandate requires a brief review of the facts surrounding the settlement. At the time the $680,000 verdict was entered against Citizens and the individual defendants, Citizens was insolvent, and its affairs were being administered by the Liquidation Bureau of the New York Insurance Department. *See Matter of Stewart v. Citizens Casualty Co.,* 34 A.D.2d 525, 308 N.Y.S.2d 513, *aff'd,* 27 N.Y.2d 685, 314 N.Y.S.2d 7, 262 N.E.2d 215 (1970), *cert. denied,* 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 805 (1971). Shortly following the verdict, Paul Ratner died without assets. The McGraths had $100,000 in liability insurance, which did not afford coverage for acts of intentional wrongdoing.

The Liquidation Bureau took the position that they could not pay any interest on the judgment, and plaintiffs' attorney conceded that this position was correct. *See Matter of People (Norske Lloyd Ins. Co.),* 249 N.Y. 139, 146–47, 163 N.E. 129 (1928); *Matter of the Liquidation of Manhattan Casualty Co.,* 29 A.D.2d 753, 287 N.Y.S.2d 748 (1968). However, plaintiffs' attorney thought that the Bureau "would be responsible for a claim based upon the verdict of $680,000 plus 6% interest from the date of the fraud up to the date of judgment which would make the amount roughly about $1,000,-000." He concluded that, if the Liquidation Bureau would accept a claim in the sum of $1,000,000, this would "give us the same rights against the Liquidation Bureau as we would have if we proceeded on the judgment." He advised Mrs. Slotkin that "it would be very foolish indeed to elect to retry the case and start from the beginning, giving up the judgment we now have . . . ." At another point, the attorney said, "Under no circumstances were we going to start from the beginning and retry the case against all of the defendants, except Berkowitz."

Because of the McGraths' limited and questionable coverage, they would have substantial personal exposure under the re-

instated verdict and judgment. In the words of plaintiffs' attorney, the Liquidation Bureau was "extremely anxious to get the MCGRATHS (sic) out of the case without exposing them to the enormous personal liability that proceeding on the judgment would involve", and "the overriding reason for the Liquidation Bureau seeking a settlement was to protect the MCGRATHS (sic) ...." Plaintiffs' attorney believed, however, that he would have been able to collect "very little indeed" from the McGraths personally.

When the Liquidation Bureau agreed to accept a claim from plaintiffs in the sum of $1,000,000, which was expected to result in a cash payment of approximately fifty cents on the dollar, and the McGraths' insurance carrier agreed to pay $100,000, plaintiffs settled with these defendants. Like the district court, we agree with the conclusion of plaintiffs' own attorney, who stated that the settlement with the Liquidation Bureau and the McGraths "represents about all that we would be able to accomplish, as a practical matter, in the event we proceeded on the judgment." Obviously, plaintiffs did not elect to retry their case ab initio against all of the defendants on both liability and damages.

A retrial "ab initio" means that all parties start equally from square one. The parties are then free to negotiate individual compromises of their differences, having in mind, as all negotiators must, the extent of the injuries, the likelihood of recovery, the availability of evidence, the cost of trial, the delays in judicial proceedings, and the financial responsibility of the defendants. *See Rafferty v. Rainey,* 292 F.Supp. 152, 154 (E.D.Tenn.1968); *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 462–63 (2d Cir.1974). A plaintiff who, like the plaintiffs herein, has eliminated one or more of the above unknowns before reaching square one, has a distinct advantage over one who has not. Plaintiffs have, in fact, worked out their own scenario for their proposed retrial. This contemplates that plaintiffs

and the reinsurers will stipulate that the amount of any recovery against the insurers will be the amount of plaintiffs' judgment plus interest, less the amount of the settlement (Plaintiffs' Brief at 5); and the sole issue on retrial then will be whether Ratner had acted as agent for the reinsurance companies (Plaintiffs' Reply Brief at 10). Plaintiffs' attorney believed "there was a good chance of obtaining a settlement from the insurance carriers once we made our election to retry the case without the need of completing a trial." However, that is not the way this Court wrote the script.

Because plaintiffs have, in practical effect, reinstated the verdict against Citizens and the individual defendants and are unable to retry the case ab initio against all the defendants except Berkowitz on both liability and damages, the district court did not err in dismissing the complaint as against the reinsurers.[1] The judgment of the district court is affirmed.

---

1. Because we affirm for the reasons stated, we need not reach the district court's alternate

holding that the claims against the reinsurers are insufficient as a matter of law.