(March 25, 1999)

■ In the Matter of the LIQUIDATION OF UNION INDEMNITY INSURANCE COMPANY OF NEW YORK. ROYAL BANK AND TRUST COMPANY, Appellant, v SUPERINTENDENT OF INSURANCE OF THE STATE OF NEW YORK, Respondent. [687 NYS2d 132] —Judgment, Supreme Court, New York County (Ira Gammerman, J.), entered October 9, 1997, which awarded plaintiff judgment in the principal amount of $3,087,875.08 plus certain interest, attorney's fees, costs and disbursements, based upon, *inter alia,* an order of the same court and Justice, entered March 25, 1997, which set the rate of interest owed by defendant pursuant to certain investor bonds at 12% until August 17, 1985, the date of liquidation of Union Indemnity Insurance Company, and at 9% subsequent to that date, unanimously reversed, to the extent appealed from, on the law, without costs, the portion of the judgment calculating interest vacated, and the matter remanded for recalculation of interest in accordance with this memorandum.

The facts giving rise to this appeal are set forth in a prior

decision of the Court of Appeals (92 NY2d 107) and need not be repeated here.

The only issue extant on this appeal is the appropriate rate of interest due plaintiff on the amounts owed to it by defendant pursuant to the subject bonds. While the parties are in agreement that the contract rate of interest should be applied for the period up until the liquidation of Union Indemnity Insurance Company, which issued the bonds, they differ as to the rate applicable to the post-liquidation period. In addition, they differ as to what the contractual rate actually is.

Since we find, contrary to Supreme Court, that the contractual rate of interest should have been applied subsequent to the liquidation rather than the statutory rate applicable to post-judgment interest, we reverse.

Initially, we reject defendant's argument that plaintiff's claim to the contractual rate of interest is governed by the rule, set forth in Insurance Law § 7405 (b), that all such claims be fixed as of the date of the order of liquidation, here August 17, 1985.

As defendant correctly contends, Insurance Law §§ 7603 and 7602 (g) permit payment by the Security Fund of only "allowed claims", which are defined by section 7602 (g) as claims allowed by the court in a proceeding under Insurance Law article 74. Defendant argues from this that the interest recoverable by plaintiff is limited by the provisions of Insurance Law § 7405 (b), which provides that "[t]he rights and liabilities of any such insurer and of its creditors, policyholders, shareholders, members and all other persons interested in its estate shall, unless otherwise directed by the court, be fixed as of the date the order [directing liquidation] is entered".

While this section does require that article 74 claims be fixed as of the date of liquidation, contrary to defendant's contention, however, it does not follow that post-liquidation interest paid under the contract rate of interest is not an allowed claim within the meaning of sections 7603 and 7602 (g) and that post-liquidation interest should be set according to the statutory rate generally applicable to post-judgment interest (see, CPLR 5003, 5004).

The Court of Appeals, in rejecting defendant's claim that no post-liquidation interest at all was recoverable by plaintiff as an allowed claim, specifically noted that the Security Fund, which is administered pursuant to article 76 of the Insurance Law, serves a "fundamentally different purpose" than that served by the traditional rule, as codified in article 74 of the Insurance Law, requiring that the limited funds of an insolvent insurer be preserved in order to satisfy all creditors equally

(*supra,* at 119). The Court thus stated (92 NY2d, *supra,* at 119):

"In accordance with the intended goal of article 76 security funds 'liability may extend beyond the assets of the defunct insurance company, as such claims may eventually be allowed against the insurance security fund established pursuant to article 76' (*compare, Matter of Transit Cas. Co. [Digirol-Superintendent of Insurance],* 79 NY2d 13, 23-24 [Kaye, J., *dissenting*], *cert denied* 506 US 869).

"The appellant Superintendent's 'allowed claim' argument is also unavailing. Postliquidation interest may appropriately constitute an allowed claim. 'The rule that interest is not allowed after the property of any insolvent has passed into the hands of an official liquidator applies only in the distribution of the proceeds of the property by the liquidator where the proceeds are insufficient to pay all creditors in full' (*Matter of People [Norske Lloyd Ins. Co.],* 249 NY 139, 147, *supra*). Indeed, in this case, although insolvent Union's estate assets are evidently insufficient to pay all estate claims in full, no comparable plight is advanced with respect to the Security Fund's inability to pay claims in accordance with its statutory mission, with interest."

Given that the Court has determined that postliquidation interest is an allowed claim under article 76, even though it is not necessarily recoverable under article 74, and that the goal of article 76 is to provide dollar for dollar recovery (92 NY2d, *supra,* at 127), we see no rationale to reduce the amount of interest to the statutory rate generally applicable to judgments, merely because the liquidation has been accomplished. Indeed, were we to find that the amount due plaintiff had to be "fixed" as of the date of liquidation, such a finding would logically preclude the payment of any post-liquidation interest, or attorney's fees, both of which have been held by the Court of Appeals to be allowed claims.

While we find that plaintiff is due the contractual rate of interest, we agree with the Superintendent that the proper contractual rate is 12%, rather than, as is contended by plaintiff, the higher rates stated in the so-called "Boyle agreement", i.e., 13.5% and 15% on past due amounts. This agreement, entered into after the default and shortly before Union Indemnity became insolvent, did not constitute a modification of the insurer's obligation and was, instead, essentially a loan agreement, by which Union Indemnity agreed to pay higher interest in return for an extension of its obligations. Concur—Ellerin, P. J., Nardelli, Rubin and Saxe, JJ.